IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff*, | |
| v. | Criminal No. ELH-17-232 |
| CLAUDIS LASSISTER,<br>*Defendant* | |

**MEMORANDUM**

On May 13, 2020, Claudis Lassiter, the self-represented defendant, filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting relief from his sentence due to COVID-19. ECF 468 (the "Motion"). Three exhibits are attached to the Motion. ECF 468-1 to ECF 468-3. The government opposes the Motion (ECF 482) and has submitted one exhibit. ECF 482-1. Lassiter has not replied. *See* Docket.

No hearing is not necessary to resolve the Motion. For the reasons that follow, I shall deny the Motion.

**I.    Background**

On August 1, 2017, a grand jury sitting in the District of Maryland returned a seven-count Second Superseding Indictment, charging Lassiter and ten others in Count One with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, and cocaine, in violation of 21 U.S.C. § 846 and 18 U.SC. § 2. ECF 93.

Lassiter entered a plea of guilty to Count One on June 19, 2018 (ECF 315), pursuant to a Plea Agreement. ECF 317. In accordance with Fed. R. Crim. P. 11(c)(1)(C), the parties stipulated to a sentence in the range of 120 to 144 months of imprisonment. ECF 317, ¶ 8. On August 14, 2018, this Court sentenced Lassiter to 126 months' imprisonment in the Bureau of

Prisons ("BOP"), with credit for time served in custody since May 19, 2017. ECF 384 (Judgment).

Defendant, who is 41-years-old, is currently incarcerated at FCI Allenwood Low in Pennsylvania. According to Lassiter, his projected release date is May 1, 2026. ECF 468 at 1. As of June 25, 2020, there were no active cases of COVID-19 among either the inmates or staff at FCI Allenwood. *See COVID-19: Coronavirus*, BUREAU OF PRISONS, https://bit.ly/382yYkh (last accessed June 26, 2020).

## II. Discussion

### A. Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides one such statutory vehicle to modify a defendant's sentence. Pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment." Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon exhaustion of administrative rights, may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:[1]
>
>    (A)  Medical Condition of the Defendant.—

---

[1] Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

>    (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>    (ii) The defendant is—
>
>      (I) suffering from a serious physical or medical condition,
>
>      (II) suffering from a serious functional or cognitive impairment, or
>
>      (III) experiencing deteriorating physical or mental health because of the aging process,
>
>    that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

The defendant, as the movant, bears the burden of establishing that he is entitled to a

4

sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). And, compassionate release is a rare remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

### B.  Exhaustion of Administrative Remedies

Defendant contends that he exhausted his administrative remedies when his request for release was denied April 14, 2020. ECF 468 at 2; ECF 468-1 at 7. However, the government argues that Lassiter's Motion is not properly before the Court because he has "only requested and been denied release to home confinement, not compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)." ECF 482 at 2 n.4; *see also id.* at 10.

On April 2013, defendant filed an "Inmate Request To Staff" form requesting his "early release" or "furlough . . . until all this pandemic is over!!" ECF 468-1 at 6. To be sure, defendant did not reference compassionate release or § 3582(c)(1)(A)(i). Instead, Lassiter cited the "[C]ares Act," which, among other things, concerns the BOP's authority to release prisoners to home confinement. *See* Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020). The BOP, however, did not misunderstand Lassiter's request. The denial letter that defendant received on April 14, 2020, states, ECF 468-1 at 7: "This is in response to your Inmate Request to Staff in which you would like to be considered for Compassionate Release due to your health concerns as they relate to COVID-19." Thus, the BOP construed defendant's petition as a request for compassionate release.

Accordingly, I am satisfied that defendant has exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).

### C.  Extraordinary and Compelling Reasons

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).  That crisis is COVID-19.[2]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

COVID-19 is a highly contagious and sometimes fatal respiratory illness. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh.  Although many people who are stricken with the virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…." *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).

As of June 26, 2020, COVID-19 infected over 2.4 million Americans and has caused more than 124,000 deaths in this country. *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV., https://bit.ly/2WD4XU9 (last accessed June 26, 2020).  Moreover, according to the Centers for Disease Control and Prevention ("CDC"), certain risk factors increase the chance of severe illness from the virus.  The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system. *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for*

---

[2] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19. *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

*Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://bit.ly/2WBcB16.

However, on June 25, 2020, to reflect the most recently available data, the CDC revised its guidance to recognize a set of persons who are at higher risk of severe illness from COVID-19, and it created a second category for persons who "might" be at risk for complications from COVID-19.  For example, "Severe to moderate asthma" is an underlying medical condition that was moved from the former category to the latter and is now identified as a condition that "might" put an individual at higher risk for COVID-19 complications.

Currently, there is no vaccine and no known cure for COVID-19.  Therefore, the CDC recommends preventative measures to decrease transmission, such as social distancing and mask wearing. *See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed June 25, 2020). But, social distancing is particularly difficult in the penal setting. *See Seth*, 2020 WL 2571168, at *2.  Prisoners have little ability to decide for themselves to implement recommended health precautions, such as isolating themselves from others. *See id.*  Nor are they readily able to secure products to protect themselves, such as masks and hand sanitizers.

As a result, correctional facilities are especially vulnerable to viral outbreaks and ill-suited to stem their spread. *See Coreas v. Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *see also*  Letter of 3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that the "close quarters of jails and prisons, the inability to

7

employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely").[3]

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. And, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 482 at 6-8 (detailing BOP's response to COVID-19. Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread." Nevertheless, as with the country as a whole, the virus persists in penal institutions.[4]

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ." *Hallinan*, 2020 WL 3105094, at *9. Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

---

[3] The Court may take judicial notice of matters of public record. Fed. R. Evid. 201.

[4] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country. Timothy Williams et al., Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide," N.Y. TIMES (June 18, 2020), https://nyti.ms/37JZgH2.

Lassiter asserts that his hypertension (high blood pressure) places him at risk of becoming severely ill if stricken with COVID-19. He asserts that this amounts to an "extraordinary and compelling" reason to reduce his sentence to time served. ECF 468 at 2; *see* ECF 468-1 at 4 (Lassiter's medical records). The government disagrees, arguing that the CDC does not list hypertension as a risk factor for the virus if there are no other underlying health conditions. ECF 482 at 11; *id.* at n.10.

The CDC recognizes hypertension as a risk factor. Specifically, the CDC states on its website: "Having other cardiovascular or cerebrovascular disease, such as hypertension (high blood pressure) or stroke, may increase your risk of severe illness from COVID-19." *See Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://bit.ly/2WBcB16. The scientific literature likewise suggests that hypertension increases the risk of mortality due to COVID-19. *See Chao Gao, et al.*, *Association of Hypertension and Antihypertensive Treatment with COVID-19 Mortality: A Retrospective Observational Study*, 41 European Heart J. 2058 (June 4, 2020) (finding hypertension was associated with a two-fold increase in the risk of mortality from COVID-19 as compared to no hypertension).

Indeed, numerous courts have found that hypertension constitutes a compelling reason for a sentence modification in light of COVID-19. *See, e.g.*, *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2-4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, in combination with prison conditions); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (same); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (same); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL

1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (same). Therefore, I find that Lassiter has a medical condition that could present an "extraordinary and compelling" reason to reduce his sentence under § 3582(c)(1)(A)(ii).

Significantly, however, there is no evidence of any cases of COVID-19 at FCI Allenwood. Thus, although the presence of COVID-19 within a prison is not a necessary prerequisite for release, the fact that there are no cases at FCI Allenwood reduces the imminence of the risk to Lassiter.

In any event, the sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of reducing Lassiter's sentence. To start, defendant's crimes were indisputably serious: he admitted to participating in a conspiracy to distribute large quantities of heroin, fentanyl, and cocaine. *See* ECF 317, ¶ 6(a). Further, this was not defendant's first federal conviction for a drug offense.

On November 28, 2007, Judge Andre M. Davis sentenced Lassiter to 60 months' imprisonment for conspiracy to distribute cocaine. *See United States v. Lassiter*, AMD-06-0448, ECF 151 (D. Md.). Defendant was placed on supervised release on June 1, 2012, after serving 48 months in the custody of the Bureau of Prisons ("BOP"). *See id.* at ECF 237. Although defendant previously served 48 months in BOP custody for trafficking cocaine, this did not deter him from committing another serious federal drug offense. And, at this point, defendant has served less than half of his sentence.

Therefore, given the absence of COVID-19 at FCI Allentown, the facts of Lassiter's offense, and his prior federal criminal history, the Court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted at this time.

10

### III. Conclusion

For the reasons stated above, I shall deny the Motion (ECF 468), without prejudice. An Order follows, consistent with this Memorandum.


Date: July 6, 2020                                          /s/
                                                Ellen Lipton Hollander
                                                United States District Judge