IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
*Plaintiff*,

v.                                                          Criminal No. ELH-17-232

CLAUDIS LASSISTER,
*Defendant*

## MEMORANDUM OPINION

Claudis Lassiter, the self-represented defendant, was one of eleven people charged in a drug trafficking case. ECF 20. He is serving a sentence of 126 months of imprisonment, dating from May 19, 2017, for the offense of conspiracy to distribute one kilogram or more of heroin. ECF 315, ECF 317, ECF 384.

Lassiter filed his first motion for compassionate release on May 13, 2020, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF 468 (the "First Motion"). He sought relief from his sentence due to his hypertension and the elevated risks he faced from COVID-19. The government opposed the Motion. ECF 482. By Memorandum Opinion and Order of July 6, 2020, I denied the First Motion. ECF 486, ECF 487. Among other things, I concluded that, based on the facts of the offense and defendant's prior federal offense, release was not appropriate at that time. ECF 486 at 10.

Mr. Lassiter promptly moved for reconsideration. ECF 491. He complained that I ruled before he had an opportunity to reply to the government's opposition. I agreed. ECF 504. Nevertheless, upon further review, I determined that there was no basis to alter my ruling. *Id.*

Thereafter, defendant filed correspondence in which he asked the Court to reconsider its ruling, based on a change in circumstances at the institution where he was then held. ECF 527.

By Order of July 23, 2021, I asked the government to respond.  ECF 545.  The government's opposition is docketed at ECF 555.  It is supported by exhibits.[1]  Defendant replied.  ECF 560.  He also submitted exhibits.

In February 2023, the Bureau of Prisons ("BOP") released defendant to home confinement.  On June 3, 2024, while on home confinement, Mr. Lassiter again moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  ECF 631 ("Second Motion").  He also submitted exhibits in support of his Second Motion, including his Declaration.  *See* ECF 631-12.  The government's opposition is docketed at ECF 642.  Defendant did not reply.  The Office of the Federal Public Defender has declined to supplement the Second Motion or seek appointment of counsel.  ECF 635.

No hearing is necessary to resolve the Second Motion.  For the reasons that follow, I shall deny the Second Motion.

## I.   Factual and Procedural Background

On August 1, 2017, a grand jury in the District of Maryland returned a seven- count Second Superseding Indictment.  ECF 93.  Of relevance here, Lassiter and  ten  others were charged  in  Count  One  with  conspiracy  to  distribute  and  possess  with  intent  to  distribute heroin, fentanyl, and cocaine,  in  violation of 21 U.S.C. § 846 and 18 U.SC. § 2.  *Id.*

Lassiter entered a plea of guilty to Count One on June 19, 2018 (ECF 315), pursuant to a Plea Agreement.  ECF 317.  In accordance with Fed. R. Crim. P. 11(c)(1)(C), the  parties stipulated to a sentence in the range of 120 to 144 months of imprisonment.  ECF 317, ¶ 8.

The  Plea  Agreement  contained  a  Statement  of  Facts.  *Id.* ¶ 6.   According  to  the

---

[1] Mr. Lassiter also moved for a default judgment.  ECF 548.  I denied that motion by Order of October 14, 2021.  ECF 552.

stipulation, defendant conspired to obtain and distribute one kilogram or more of heroin in Baltimore.  Defendant was an alternate source of supply for co-defendant two.  *Id.*  Defendant and others stored and processed wholesale quantities of narcotics at an apartment in Baltimore that was located through a tracking device placed on defendant's vehicle.  A search of the stash apartment was conducted on May 13, 2017, and law enforcement recovered about one kilogram of fentanyl, 2990 grams of heroin, over two kilograms of cocaine, drug cutting agents, and a kilogram press.  *Id.*  As investigators approached defendant on May 19, 2017, he jumped into his vehicle and attempted to flee, without success.  Defendant agreed that it was foreseeable to him that members of the conspiracy would distribute over ten kilograms of heroin but less than thirty kilograms.  *Id.*

With respect to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the Amended Presentence Report ("PSR," ECF 383) reflects that defendant had a base offense level of 34.  *Id.* ¶ 34.  After three deductions for acceptance of responsibility under U.S.S.G. § 3E1.1 (*id.* ¶¶ 21, 22), defendant had a final offense level of 31.  *Id.* ¶ 23.

Defendant had a criminal history category of II.  *Id.* ¶ 28.  This resulted from a federal conviction in 2007 for the offense of conspiracy to distribute cocaine.  *Id.* ¶ 26; *see* AMD-06-0448 (D. Md.).  In that case, then District Judge Andre Davis sentenced defendant to five years of imprisonment.

In this case, the offense carried a mandatory minimum term of ten years of imprisonment.  *See* ECF 317, ¶ 3(a).  Defendant's advisory sentencing Guidelines called for a sentence of incarceration ranging between 121 and 151 months.  And, as noted, under Rule 11(c)(1)(C), the parties agreed to a sentence ranging from 120 months to 144 months of imprisonment.  On August 14, 2018, this Court sentenced Lassiter to 126 months of imprisonment, with credit

3

for time served since May 19, 2017.  ECF 384  (Judgment).

On February 7, 2023, pursuant to 18 U.S.C. § 3621, defendant, who is almost 46-years-old, was released from BOP on a "furlough," and he is now on home confinement.  ECF 631 at 6; ECF 631-12, ¶ 2; ECF 83 at 3.  Defendant has a projected release date of June 11, 2025.  *See Bureau of Prisons Inmate Locator*, https://www.bop.gov/inmateloc/# (search by BOP Register Number 42543-037) (last accessed August 29, 2024); *see also* ECF 631-12, ¶ 9.

Defendant explains that he has not included a release plan in the Second Motion because he has "already been released from prison on home monitoring confinement."  ECF 631-2 at 2, 3, 4, 5.  Lassiter is employed by Pepsi Beverage Company.  ECF 631-9.

Since defendant's release to home confinement in February 2023, he has abided by all rules and regulations.  ECF 631-12, ¶¶ 3, 4.  Moreover, defendant has gotten married.  *Id.* ¶ 5.  But, defendant complains that, apart from work and attending religious services, he is "hindered and restricted" in his activities, such as attending his children's activities and "sports events."  *Id.* ¶ 6.  Moreover, he complains that the electronic monitoring impedes his ability to work as much as he wants.  *Id.* ¶ 8.  According to Lassiter, his "rehabilitative efforts," his "strong family ties," and the interest of justice constitute extraordinary and compelling reasons for compassionate release.  *Id.* ¶ 12.

Defendant's wife has also submitted a Declaration.  ECF 631-14.  She asserts that electronic home monitoring creates "an enormous hardship" for the family, because it affects defendant's ability to work a second job or to work overtime.  *Id.* ¶ 2.

## II. Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, ___ F.4th ___, 2024 WL 3881520, at *3 (4th

4

Cir. Aug. 21, 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. Apr. 18, 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

A statutory exception is codified at 18 U.S.C. § 3582, "commonly known as the 'compassionate release exception.'"  *Moody*, 2024 WL 3881520, at *3; *see Hargrove*, 30 F.4th at 194; *see also United States v. Osman*, 2024 WL 3633573, at *3 (4th Cir. Aug. 2, 2024) (stating that a motion under § 3582(c)(1)(A) is "commonly referred to as a motion for compassionate release . . . .").  The provision was first enacted as part of the Sentencing Reform Act of 1984.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction."  *Hargrove*, 30 F.4th at 194.

As originally enacted, the compassionate release provision permitted a court to alter a sentence only upon motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984).  This meant that a defendant seeking compassionate release had to rely on the BOP Director for relief.  *See Bethea*, 54 F.4th at 831; *see, e.g.*, *Orlansky v. FCI Miami Warden*, 754 F.

App'x 862, 866–67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the BOP rarely filed such a motion on an inmate's behalf.  As a result, compassionate release was an infrequent occurrence.  *See Hr'g on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

However, with the passage of the First Step Act ("FSA") in 2018, *see* Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)), Congress "broadened" the authority of courts to grant sentencing modifications pursuant to 18 U.S.C. § 3582, *Malone*, 57 F.4th at 173, by enabling a federal inmate to file a motion for compassionate release directly with the court, as long as the inmate first exhausted administrative remedies.  *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020).  In particular, the FSA authorizes a court to grant compassionate release "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see also Ferguson*, 55 F.4th at 268; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276.

Under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are satisfied.  *Brown*, 78 F.4th at 128; *Bethea*, 54 F.4th at 831.  Specifically, "the district court must conduct a two-step analysis." *United States v. Centeno-Morales*, 90 F.4th 274,

279 (4th Cir. 2024); *see also Bond*, 56 F.4th at 383.

The first step actually consists of two parts. The court "must determine: 1) whether extraordinary and compelling reasons warrant . . . a [sentence] reduction; and 2) that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Malone*, 57 F.4th at 173; *see Moody*, 2024 WL 3881520, at * 4; *Davis*, 99 F.4th at 653; *Bond*, 56 F.4th at 383; *Bethea*, 54 F.4th at 831; *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021).

If that first step is met, the court then proceeds to the second step. Under the second step, the court must determine whether release is appropriate in light of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see Moody*, 2024 WL 3881520, at *4; *Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330. "Importantly, a court assessing a compassionate release motion is entitled to consider the § 3553(a) factors '[o]nly after' conducting the first step's analysis." *Osman*, 2024 WL 3633573, at *4 (citations omitted) (alteration in *Osman*).

As the Fourth Circuit has recognized, "when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)); *see Davis*, 99 F.4th at 653–54; *see also Malone*, 57 F.4th at 173 (stating that the district court may consider the § 3553(a) sentencing factors only after determining that extraordinary and compelling reasons warrant a sentence reduction and that a reduction is consistent with the Sentencing Commission's policy statements); 28 U.S.C. § 994(t).

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021). Notably, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see United States v. Gutierrez*, 2023 WL 245001, at *5 (4th Cir. Jan. 18, 2023); *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189.

The Policy Statement codified at U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A)" ("Policy Statement"). "[U]ntil recently," that Policy Statement did not apply to motions filed by prisoners. *Davis*, 99 F.4th at 654; *see McCoy*, 781 F.3d at 281. The Policy Statement began: "Upon motion *of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2021) (emphasis added). Interpreting this language, the Fourth Circuit said in *McCoy*, 981 F.3d at 281, that, "[b]y its plain terms . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." Therefore, on the basis of that earlier text, the Court held: "When a defendant exercises his . . . right to move for compassionate release on his own behalf, § 1B1.13 does not apply, and thus § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." As a result, district courts were "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (citation omitted).

However, effective November 1, 2023, U.S.S.G. § 1B1.13 was amended. *See Davis*, 99 F.4th at 654 (citing 88 Fed. Reg. 28254 (May 3, 2023)). The Policy Statement now begins: "Upon motion of the Director of the Bureau of Prisons *or the defendant* pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . ." U.S.S.G. § 1B1.13 (2023)

(emphasis added).  Therefore, the Policy Statement is now applicable to defendant-filed motions under § 3582(c)(1)(A).  *Davis*, 99 F.4th at 658 (directing district court on remand "to revisit [the petitioner's] arguments in light of the Sentencing Commission's new policy statement outlining when and how to consider changes in law as an extraordinary and compelling reason for a reduction").  As a result, when a defendant files a motion for compassionate release, a court must ensure that any sentence reduction "is consistent with" the Policy Statement's provisions. 18 U.S.C. § 3582(c)(1)(A).

The Policy Statement provides, in part, U.S.S.G. § 1B1.13(a):

(B) IN GENERAL.—Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

> (1) (A) extraordinary and compelling reasons warrant the reduction; or
>
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

Section 1B1.13(b) of the Policy Statement is titled "EXTRAORDINARY AND COMPELLING REASONS."  It identifies multiple circumstances that, individually or in combination, may provide "extraordinary and compelling reasons" for a reduction in sentence.  *See* § 1B1.13(b)(1)–(6). These include certain medical circumstances of the defendant, such as a terminal illness, "serious cognitive impairment," a medical condition that requires "specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death"; or

9

the defendant is at imminent risk of being affected by "an ongoing outbreak of infectious disease" or "an ongoing public health emergency . . . .", § 1B1.13(b)(1)(A), (B), (C), (D); the defendant's age, along with other factors, § 1B1.13(b)(2); the defendant's family circumstances, § 1B1.13(b)(3)(A), (B), (C), (D); the fact that the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer, § 1B1.13(b)(4)(A), (B); for a defendant who received an "unusually long sentence" and has served at least 10 years of the sentence, a non-retroactive change in the law that "produce[s] a gross disparity" in relation to "the sentence likely to be imposed at the time the motion is filed . . . .", § 1B1.13(b)(6); and "any other circumstances or combination of circumstances . . . similar in gravity to" the circumstances "described in paragraphs (1) through (4)."  § 1B1.13(b)(5).

Section 1B1.13(c) of the Policy Statement is titled "LIMITATION ON CHANGES IN LAW."  It specifies that, "[e]xcept as provided in subsection (b)(6)," which concerns an "unusually long sentence," "a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement."  U.S.S.G. § 1B1.13(c).  "However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under [the Policy Statement], a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction."  *Id.*; *see Davis*, 99 F.4th at 654.[2]

---

[2] In *Concepcion v. United States*, 597 U.S. 481 (2022), the Supreme Court concluded that a district court's general obligation "to consider [all] nonfrivolous arguments presented by the parties," *id.* at 487, required it "to consider intervening changes of law or fact in exercising [its] discretion to reduce a sentence pursuant to the First Step Act."  *Id.* at 500.  However, the Court acknowledged that "Congress or the Constitution [may] limit[] the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence . . . ."  *Id.* at 486.  "Thus," the Court noted, "Congress expressly cabined district courts' discretion [to

Section 1B1.13(d) of the Policy Statement concerns rehabilitation of the defendant.  It limits the weight a court may assign to a defendant's rehabilitation while serving a sentence.  The Section provides that, "[p]ursuant to 28 U.S.C. §994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  U.S.S.G. § 1B1.13(d).  However, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  *Id.*  And, § 1B1.13(e) provides that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction.

Even if a defendant establishes that extraordinary and compelling reasons warrant relief, the court must also consider the sentencing factors under 18 U.S.C. § 3553(a) to determine whether, in its discretion, a reduction of sentence is appropriate.  *See Dillon v. United States*, 560 U.S. 817, 826–27 (2010); *Brown*, 78 F.4th at 128; *Mangarella*, 57 F.4th at 200, 203; *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also Kibble*, 992 F.3d at 329–30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021)

---

reduce a sentence] by requiring courts to abide by the Sentencing Commission's policy statements." *Id.* at 495.  It follows that, because the Policy Statement is now applicable to prisoner-filed motions for compassionate release, a court may consider intervening changes of law only in the manner that the Policy Statement prescribes.

(per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors, to the extent applicable, in exercising its discretion); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693–94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors). Notably, the amendments to the Guidelines in November 2023 did not alter this requirement.

The § 3553(a) "factors include 'the nature and circumstances of the offense'; 'the history and characteristics of the defendant'; and the need for the sentence to 'provide just punishment,' 'afford adequate deterrence,' 'protect the public from further crimes of the defendant,' and 'provide the defendant with . . . training, medical care, or other correctional treatment.'" *Jenkins*, 22 F.4th at 170 (quoting 18 U.S.C. § 3553(a)). As the Fourth Circuit has observed, "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *Jackson*, 952 at 500). The district courts "enjoy the discretion to give additional weight to any one factor so long as they do not confine their analysis to that factor." *Davis*, 99 F.4th at 656; *see United States v. Friend*, 2 F.4th 369, 381–82 (4th Cir. 2021). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384–85.

In *Davis*, 99 F.4th at 659, the Fourth Circuit said: "District courts are not required to acknowledge and address each of the defendant's arguments on the record when conducting a § 3553(a) analysis." But, "'the record as a whole'" must demonstrate that the judge considered the parties' contentions and had "'a reasoned basis'" for the exercise of judicial discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also Davis*, 99 F.4th at 659; *United States v. Puzey*, 2023

WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).  In particular, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190).  And, a district court abuses its discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law."  *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167; *see also Brown*, 78 F.4th at 132 (criticizing district judge's "cursory" consideration of the § 3553(a) factors); *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018).

"How much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021).  For example, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence, . . . a more robust and detailed explanation [is] required.'"  *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*).  In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *Cohen*, 2022 WL 2314300, at *1 (quoting *High*, 997 F.3d at 190).  And, a more detailed explanation may be required if a substantial change in the law creates a disparity between the sentence a defendant actually received and the sentence he would receive, if sentenced under current law.  *See Davis*, 99 F.4th at 661; *see* 18 U.S.C. § 3553(a)(6) (directing a court to consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.").  In explaining its compassionate release ruling, "a district court is

permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors . . . . " *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

*Davis*, 99 F.4th 647, is illustrative.  The *Davis* Court recognized that a change in the Guidelines or the law can produce a sentencing disparity under § 3553(a)(6).  *Id.* at 654, 655.  And, the Court observed that changes in the law since the defendant's sentencing "would [have] lower[ed] [the defendant's] guidelines range from a 188–235 months range to [a] 92–115 months range."  *Id.* at 661.  According to the Court, if the defendant were sentenced under current Guidelines, "it is very likely that [the defendant] would already be out of prison."  *Id.*  The Court stated, *id.*:  "That reality alone implicates one of the applicable sentencing factors: 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.'"  *Id.* (quoting 18 U.S.C. § 3553(a)(6)).  The Court concluded that the district court was obligated to provide a "detailed explanation" of its § 3553(a) analysis, because "[t]his sentence disparity is so stark, and the change in law so substantial."  *Davis*, 99 F.4th at 661 (*citing Chavez-Meza v. United States*, 585 U.S. 109, 119 (2018)).

### III. Discussion

Defendant was born in November 1978.  ECF 83 at 3.  He is now almost 46 years of age.  As noted, in his Second Motion, defendant largely focuses on the restrictions associated with his "furlough."  *See* ECF 631-12.

In an earlier submission, ECF 555, the government acknowledged that defendant's hypertension is, in general, a medical condition that establishes a compelling reason for compassionate release.  *Id.* at 18, 20.  But, because defendant had declined the COVID-19 vaccine on January 5, 2021, the government argued that defendant was not entitled to compassionate release.  *Id.* at 20-27.  Yet, the government also suggested that if defendant received the vaccine,

this would provide a basis to deny compassionate release. *Id.* at 27. This is tantamount to the proverbial "Catch 22"; either way, the government contends that defendant is not entitled to compassionate release.

The government acknowledged that, due to defendant's hypertension, he "has established the minimum threshold showing for compassionate release." *Id.* at 20. Yet, the government then argued that many courts "have denied relief when hypertension is the only potential risk factor presented.[]" *Id.* at 28.

In any event, in defendant's earlier reply (ECF 560), he cited two other "medical co-morbidities he inadvertently failed to advance in his original § 3582(c) briefing." *Id.* at 3. Specifically, he cited his BMI index of 31.9 on December 7, 2021, and a "long history with smoking tobacco." *Id.* Moreover, Lassiter explained that on December 8, 2021, he received his first dose of the Moderna vaccine. *Id.* at 1.

Given that defendant has been vaccinated for COVID-19, the government's argument regarding the defendant's refusal to be vaccinated is moot. And, as this Court and others have said, the vaccine, while helpful, is not a guarantee of protection from the risks of COVID-19. Therefore, receipt of the vaccine is not a basis to deny relief.

Vaccination against COVID-19 "does not negate that [defendant's] underlying health conditions make him eligible for compassionate release." *United States v. Spriggs*, CCB-10-0364, 2021 WL 1856667, at *3 (D. Md. May 10, 2021). As Judge Grimm said in *United States v. Palmer*, PWG-13-623, 2021 WL 3212586, at *3 (D. Md. July 29, 2021): "It is impossible to predict the impact of the vaccines on future strains of the virus, just as it is impossible to predict the impact of COVID-19 on [defendant's] specific medical issues." Moreover, the vaccine does not provide permanent immunity. Indeed, "[t]he virus that causes COVID-19 is always changing, and

protection from . . . COVID-19 vaccination declines over time." *See COVID-19 Vaccine Effectiveness*, CTRS. FOR DISEASE CONTROL & PREVENTION (Feb. 1, 2024), https://perma.cc/4BPJ-4XKZ.

The future trajectory of the COVID-19 pandemic is anything but predictable. In particular, the Court is mindful that the CDC has confirmed that breakthrough infections of COVID-19 among vaccinated individuals occur and can prove serious. *See Rates of COVID-19 Cases and Death by Vaccination Status*, CTRS. FOR DISEASE CONTROL & PREVENTION, July 29, 2024, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last accessed July 30, 2024). An earlier analysis of "nationwide data" from the CDC revealed that "[t]he vaccinated made up 42 percent of fatalities in January and February [of 2022,] during the highly contagious omicron variant's surge, compared with 23 percent of the dead in September, the peak of the delta wave." Fenit Nirappil & Dan Keating, *Covid Deaths No Longer Overwhelmingly Among the Unvaccinated as Toll on Elderly Grows*, WASH. POST (Apr. 29, 2022), https://perma.cc/YU8Q-2C7U.

In addition, the CDC has explained: "Since the start of the COVID-19 pandemic, infections with SARS-CoV-2, the virus that causes COVID-19, have peaked during the winter and also surged at other times of the year. These periodic surges are due in part to the emergence of new variants and decreasing immunity from previous infections and vaccinations." *See COVID-19 Can Surge Throughout the Year*, CTRS. FOR DISEASE CONTROL & PREVENTION, July 3, 2024 https://perma.cc/KA4Z-UNTD (last accessed July 25, 2024).

"At the end of the day, district judges are not epidemiologists." *United States v. Sherrod*, 19-20139, 2021 WL 3473236, at *5 (E.D. Mich. Aug. 6, 2021). But, even to a lay person, it is clear that the fact of vaccination for an earlier strain of COVID-19, or even a prior COVID-19

infection, does not eliminate concerns about underlying health conditions that might otherwise render an individual eligible for compassionate release.

Several judges of this Court have concluded that an inmate is eligible for compassionate release, notwithstanding his vaccination status. *See*, *e.g.*, *United States v. Hegie*, RDB-14-411, 2022 WL 605383, at *2 (D. Md. Mar. 1, 2022) (finding that, in light of the COVID-19 pandemic, a fully vaccinated defendant who suffered from obesity and asthma presented an extraordinary and compelling reason for his release); *United States v. Coleman*, PWG-17-393, WL 356724, at *3 (D. Md. Feb. 7, 2022) (determining that, in light of the dynamic nature of the COVID-19 pandemic and the absence of any information concerning the inmate's vaccination status, defendant's underlying medical conditions qualified as an extraordinary and compelling reason for his release); *United States v. Rivas*, TDC-19-0417, 2022 WL 36941, at *2 (D. Md. Jan. 4, 2022) (explaining that vaccinated defendant who was a paraplegic and suffered from frequent urinary tract infections could satisfy the extraordinary and compelling prong of the analysis).

Therefore, I conclude that defendant's vaccination status does not render him ineligible for compassionate release. *See Palmer*, 2021 WL 3212586, at *3 (noting that it is not possible "to predict the impact of the vaccines on future strains of the virus . . . .").

Nevertheless, the government maintains that, in the Second Motion, defendant has not provided a basis for compassionate release, because he cites no medical condition. ECF 642 at 10. Rather, "[h]e simply wants more freedom . . . ." *Id.* Previously, however, defendant's health records reflected his condition of hypertension. *See* ECF 555-1 at 4; ECF 468 at 2; ECF 468-1. There is no indication that the condition has abated. Therefore, I am satisfied that defendant has a medical condition that meets the threshold requirement for eligibility.

That said, defendant is now on home detention.  I have not uncovered many cases in which a court has considered the analysis that applies in the context of a defendant who moves for compassionate release while already released to home confinement.  It is clear, however, that to the extent that incarceration jeopardizes one's health, or increases the risk of an adverse consequence due to COVID-19, defendant does not face that risk, because he is not incarcerated.

In *United States v. Donnes*, No. CR 16-12-BLG-SPW, 2021 WL 4290679, at *1 (D. Mont. Sept. 21, 2021), the defendant sought a time-served sentence while he was on home confinement, because of his multiple, serious medical conditions.  In granting the motion, the court cited "the sheer difficulty of maintaining [defendant's] numerous prescriptions and coordinating medical appointments and tests through BOP while also maintaining his in-home medication regimen," as well as Donnes's inability "to obtain timely refills of his prescription medications" due to administrative issues involving the defendant, his case manager, the insurance company, and the pharmacy.  *Id.*  Smith has not presented any claims of difficulty in managing his health conditions because of his status on home confinement.

*Malone*, 57 F.4th 167, is particularly instructive.  There, the defendant was released to home confinement by the BOP under the CARES Act after serving about 144 months of a 288-month sentence for a firearm and drug conspiracy offense.  *Id.* at 169, 170.[3]  While on home confinement, the defendant filed a second motion for compassionate release, based, *inter alia*, on his age and serious health ailments.  *Id.*

The district court denied the motion.  It noted that the defendant had been permitted to live in his own home, had access to medical treatment, and his "'daily needs'" were being met.  *Id.* at

---

[3] The original sentence of 330 months had previously been reduced to 288 months.  *Id.* at 170.

172.   Nevertheless, the Fourth Circuit concluded that the district court abused its discretion in denying compassionate release, *id.* at 169-70, because it failed "to properly assess the following factors which would warrant Malone's compassionate release: 'his ailing health, advanced age, and relevant 18 U.S.C. § 3553(a) factors.'" *Id.* at 169.

Malone had multiple health issues, including a colostomy bag, kidney disease, diabetes, hypertension, heart issues, malignant neoplasm of the rectum, and liver disorders.   *Id.* at 170. During Malone's incarceration, his colostomy bag made him a "pariah" with other prisoners.   *Id.*

The Court said, *id.* at 175:   "When Malone filed his first motion for compassionate release, [while still incarcerated,] he was sixty-eight years old, struggled with countless physical health ailments related to the aging process (colon-rectal cancer and a permanent colostomy bag, Type II diabetes, morbid obesity, hypertension and hyperlipidemia (both of which required medications), cystic kidney and liver disease), and had served approximately eleven years of his prison sentence."   Moreover, the Fourth Circuit noted in *Malone* that "if the district court was determined to keep Malone on home confinement for the five years remaining on his sentence, it would 'not meaningfully advance the purposes of sentencing.'" *Id.* at 177 (quoting *United States v. Gamboa*, 467 F. Supp. 3d 1092, 1102 (D.N.M. 2020)).

The Fourth Circuit was of the view that the BOP's decision to release the defendant to home confinement because he was "at severe risk of contracting COVID-19, due to his health and advanced age," was relevant to the analysis.   *Id.* at 175.   But, the district court failed to consider the defendant's "worsening health," his "steady decline," or the "additional grave ailments that had developed since sentencing."   *Id.* at 174.

In contrast to the defendant in *Malone*, Lassiter has not presented any evidence that he has a health condition that is adversely affected by home confinement.   As stated, he is not at risk of

complications from COVID-19 because of incarceration; he is not incarcerated.  He does not claim a lack of medical care.  Rather, defendant seeks formal release from the BOP because of the restrictions associated with electronic monitoring.

Nonetheless, I have concluded that defendant is eligible for compassionate release.  Therefore, the Court must next consider the sentencing factors under 18 U.S.C. § 3553(a), "to the extent those factors are applicable," to determine if compassionate release is appropriate  *Bethea*, 54 F.4th at 831; *see Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *High*, 997 F.3d at 186; *Kibble*, 992 F.3d at 330.  These factors include:  (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims.

As the judge assigned to this case at its inception, I am very familiar with the facts.  *See*, *e.g.*, *Bethea*, 54 F.4th at 834.  Defendant's conduct was extremely serious.  He was a supplier of a drug trafficking organization in Baltimore involving the distribution of a substantial quantity of heroin.  Congress has expressed its view that the drug quantity involved here warrants a significant punishment; based on the drug quantity at issue, the offense carries a mandatory minimum term of imprisonment of ten years, with a maximum term of life imprisonment.  ECF 317, ¶ 3.

As noted, the PSR reflects that defendant had a final offense level of 31 and a criminal history category of II.  ECF 383, ¶¶ 23., 28.  Defendant's advisory sentencing Guidelines called for a sentence ranging from 121 months to 151 months of incarceration.  *Id.* ¶ 59.  The Plea Agreement called for a sentence ranging from 120 to 140 months.  ECF 317, ¶ 8.  At sentencing on August 14, 2018 (ECF 382), the Court imposed a sentence of 126 months of incarceration,

pursuant to Fed. R. Crim. P. 11(c)(1)(C).  ECF 384.  Thus, defendant's sentence was just above both the mandatory minimum and the bottom of the Guidelines.  It also fell towards the low end of the range under Rule 11(c)(1)(C).

Notably, although defendant only had a criminal history category of II, he had a prior federal drug conviction.  ECF 383, ¶ 26.  In that case, Judge Davis imposed a five-year prison sentence in September 2007.  Yet, it was not sufficient to deter defendant from reoffending.  Thus, the second § 3553(a)(1) factor—defendant's personal history—is troubling, and weighs against release.

Where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments."  *United States v. Mangarella*, 57 F.4th 200, 203 (4th Cir. 2023); *see United States v. Martin*, 916 F.3d 389, 397 (4th Cir. 2019); *Kibble*, 992 F.3d at 334 n.3.  Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of [his] 'history and characteristics.'"  *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)).  The court must "at least weigh the [defendant's] conduct in the years since the[] initial sentencing[]."  *McDonald*, 986 F.3d at 412; *see Martin*, 916 F.3d at 397 (requiring an "individualized explanation" as to rehabilitative efforts).  A defendant's behavior while in BOP custody is an important indicator of whether he remains a danger to the community.  *See* 18 U.S.C. § 3582(c)(1)(A)(ii).

Rehabilitation efforts should be considered in regard to a motion for compassionate release. *See United States v. Lancaster*, 997 F.3d 171, 175 (2021) ("And in considering the § 3553(a) factors, the court can take into account a defendant's conduct after his initial sentencing."); *McDonald*, 986 F.3d at 410–12 (noting that on a motion to reduce sentence under the First Step

Act, the district court must consider defendant's post-sentencing conduct); *United States v. Randall*, 837 Fed. App'x 1008, 1009 (4th Cir. 2021) ("[A] district court must provide an individualized explanation for denying a sentence reduction motion under the First Step Act when the defendant presents evidence of his post-sentencing rehabilitation."); *United States v. Rudisill*, 834 Fed. App'x 827, 829 (4th Cir. 2021) (finding district judge abused his discretion in denying motion under the First Step Act without addressing defendant's post-sentencing conduct). However, rehabilitation alone does not warrant a defendant's immediate release. *See United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) ("[R]ehabilitation alone cannot constitute an extraordinary and compelling reason for release."). Defendant's institutional history reflects an infraction in June 2021 for possession of a hazardous tool, for which he was sanctioned.  ECF 555-2 at 1.[4]

To his credit, defendant has taken several educational classes since his sentencing.  ECF 560 at 9; ECF 560-1.  Moreover, he is now gainfully employed and appears to be doing quite well on home confinement.

Given defendant's status as a repeat federal offender, he received a reasonable sentence, if not a lenient one, for a serious offense.  He had served about half of his sentence when he was released to home confinement.  The home confinement conditions are not endangering him.  In my view, a further reduction of the sentence, or a sentence of time served, would not promote respect for the law.

---

[4] Defendant appears to have committed several infractions while incarcerated for his prior federal offense.  ECF 555-2 at 1-3.  But, I have not considered them.

### IV.  Conclusion

I conclude that, on balance, the factors under 18 U.S.C. § 3553(a) do not weigh in favor of a sentence reduction or a sentence of time served.  Therefore, I shall deny defendant's Second Motion (ECF 631).

An Order follows, consistent with this Memorandum Opinion.


Date:  September 25, 2024                         _____/s/_____

Ellen Lipton Hollander
United States District Judge