IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, | |
| v. | Criminal No. ELH-17-232 |
| CLAUDIS LASSITER, *Defendant* | |

**MEMORANDUM**

United States Probation Officer ("USPO") Katelyn Shull has filed a "Request For Early Termination" of the five-year period of supervised release for defendant Claudis Lassiter. ECF 673 (the "Request"). The government opposes the Request. ECF 677.

No hearing is necessary. Local Rule 105.6. For the reasons that follow, I shall deny the Request.

## I. Background

On June 6, 2017, a grand jury sitting in the District of Maryland returned a Superseding Indictment, charging Lassiter and ten others in Count One with conspiracy to distribute and possess with intent to distribute heroin, fentanyl, and cocaine, in violation of 21 U.S.C. § 846 and 18 U.SC. § 2. ECF 20. A Second Superseding Indictment followed on August 1, 2017. ECF 93.

Lassiter entered a plea of guilty to Count One of the Second Superseding Indictment on June 19, 2018 (ECF 315), pursuant to a Plea Agreement. ECF 317. In accordance with Fed. R. Crim. P. 11(c)(1)(C), the parties agreed to request a sentence in the range of 120 to 144 months of imprisonment. ECF 317, ¶ 8.

The Plea Agreement contained an agreed Statement of Facts. *See id.* ¶ 6(a). It states, *inter alia*, that defendant conspired to distribute one kilogram or more of heroin at a street level drug

"shop" in Baltimore. *Id.* at 4. Through intercepted communications and GPS tracking, law enforcement located a stash apartment used by defendant and co-conspirators. Law enforcement also installed cameras in the apartment, where co-conspirators processed narcotics for sale. A search of the apartment led to the recovery of about one kilogram of fentanyl, 2,900 grams of heroin, more than two kilograms of cocaine, drug cutting agents, a twenty-ton kilogram press, and other drug processing equipment. *Id.*

Defendant's residence and vehicle were searched on May 19, 2017. *Id.* When defendant saw a law enforcement officer approaching, he attempted to flee in his car. *Id.*

According to the Amended Presentence Report (ECF 383, "PSR"), defendant had a final offense level of 31 under the U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines"). *Id.* ¶ 23. In addition, he had a criminal history category of II. *Id.* ¶ 28. Notably, defendant had a prior federal drug conviction. *Id.* ¶ 26; *see* AMD-06-0448 (D. Md.). Defendant's advisory Guidelines called for a sentence ranging from 121 months to 151 months of incarceration. *Id.* ¶ 59.

Sentencing was held on August 14, 2018. ECF 382. By statute, the offense required a mandatory minimum term of imprisonment of ten years. *See* 21 U.S.C. §§ 846, 841(b)(1)(A); ECF 383, ¶ 58. In addition, it required a minimum term of supervised release of five years. *See* 21 U.S.C. § 841(b)(1)(A); ECF 383, ¶ 62.

The government sought a sentence of 144 months, consistent with the top end of the Plea Agreement. ECF 379 at 10; ECF 317, ¶ 8. According to the government's sentencing memorandum (ECF 379), when investigators searched a Honda Odyssey, a vehicle "related to defendant," they located a .380 caliber semi-automatic handgun, "loaded with 8 live rounds . . . ." *Id.* at 3. In addition, they recovered almost $8,500 in U.S. currency and six cellphones from the vehicle. *Id.* And, from a 2014 Lexus registered to defendant, law enforcement recovered more

than $40,000. *Id.* at 4. Other valuables were recovered from a residence that defendant shared with his partner. *Id.* The government characterized the defendant as "a high-level drug dealer." *Id.* at 5.

But, defendant vigorously disputed that the gun was defendant's firearm or that he even knew about it. *See* ECF 433 (Sentencing Transcript, August 14, 2018), at 17. The defense also contested any suggestion of defendant's leadership role. *Id.* at 19, 20.

The Court sentenced Lassiter to 126 months' imprisonment in the Bureau of Prisons ("BOP"), with credit for time served since May 19, 2017. ECF 384 (Judgment). The sentence was towards the low end of the range in the Plea Agreement. The Court also imposed the required term of five years of supervised release. *Id.* at 3.

Lassiter had a projected release date of May 1, 2026. ECF 468 at 1. But, in January 2023, defendant was released to a Residential Re-Entry Center and placed on home confinement. ECF 673 at 1. Then, on December 12, 2024, after Lassiter had served about seven and a half years of his ten and a half year sentence, President Joseph Biden, Jr. granted clemency to the defendant. ECF 658.[1] Lassiter was one of almost 1,500 defendants whose sentences were commuted about one month before the end of President Biden's term of office.

Notably, the defendant was not pardoned. Therefore, his term of supervised release was left "intact." *Id.* at 1. Defendant began his supervision on December 20, 2024. ECF 673 at 1. At this juncture, he has been on supervised release for about 18 months.

---

[1] The government erroneously asserts that defendant served "just over six years of his ten-and-one-half-year sentence" when clemency was granted. ECF 677 at 1. But, defendant's sentence effectively began on May 19, 2017, because he was apparently detained in pretrial custody. *See* ECF 384; ECF 433 at 46. In other words, by the time of sentencing on August 14, 2018, defendant had already served more than a year of his sentence. *Id.* Curiously, I was unable to locate a detention order for Lassiter on the Docket.

## II. Discussion

### A.

USPO Shull asserts that defendant "has complied with all standard and special conditions" of his supervision. ECF 673 at 1. Moreover, she states that Lassiter has "maintained stable residence and employment." *Id.* USPO Shull also notes that defendant is currently employed at Miller Pipeline. *Id.* And, in September 2025, he enrolled in a Commercial Driver's License ("CDL") program through Baltimore City Community College, and he obtained his CDL on December 18, 2025. *Id.*

In addition, as of June 18, 2026, the defendant had not sustained any arrests or "noteworthy violations warranting Court notification in the past 12 months . . . ." *Id.* at 2. Further, USPO Shull represents that defendant "presents no identified risk of harm to the public." *Id.*

In its opposition (ECF 677), the government observes that defendant has served only about 18 months of the five-year period of supervision imposed by the Court. *Id.* at 1. Moreover, the government recounts that defendant "committed serious crimes over an extensive period." *Id.* According to the government, "Lassiter was a source of supply for at least one of his co-defendants, while maintaining a premises used to distribute wholesale quantities of drugs." *Id.* (citing ECF 93, ECF 317). Further, the government recounts that when Drug Enforcement Administration agents searched Lassiter's stash apartment, they seized a kilogram of fentanyl, three kilograms of heroin, two kilograms of cocaine, processing equipment, and cutting agents for the purpose of selling wholesale quantities of drugs. ECF 677 at 1.

In addition, the government notes that it had requested a twelve-year sentence in this case. ECF 677 at 3. Although the Court imposed a sentence of ten and a half years, the defendant only served approximately 60% of that sentence before his sentence was commuted by President Biden.

*Id.* Therefore, the government argues that the full term of supervision is necessary to assure defendant's rehabilitation and compliance with the law. *Id.*

The Court reiterates that, by statute, the offense to which the defendant pled guilty required a mandatory minimum term of at least ten years of imprisonment and five years of supervised release. The PSR (ECF 383) reflects that defendant had a base offense level of 34 under the Guidelines. *Id.* ¶ 14. This was predicated on U.S.S.G. § 2D1.1(a)(5), because it was reasonably foreseeable to the defendant that at least 10 kilograms but less than 30 kilograms of heroin would be distributed. However, three levels were deducted for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. *Id.*¶¶ 21, 22. Therefore, the defendant had a final offense level of 31. *Id.* ¶ 23.

Defendant had a criminal history score of three points. *Id.* ¶ 27. This equates to a criminal history category of II. *Id.* ¶ 28. In particular, defendant earned three criminal history points with respect to a conviction in this court in 2007, for the offense of conspiracy to distribute and possess with intent to distribute cocaine. *See* AMD-06-0448. In that case, then U.S. District Judge Andre Davis sentenced the defendant to five years of imprisonment, along with four years of supervised release. *Id.* ¶ 26. So, the instant offense was defendant's second federal conviction.[2]

As noted, based on an offense level of 31 and a criminal history category of II, the Guidelines in this case called for a period of incarceration ranging from 121 to 151 months. *Id.* ¶ 59. The Plea Agreement called for a sentence ranging from 120 months to 144 months (*i.e.*, ten years to twelve years). And, at sentencing on August 14, 2018 (ECF 382), the Court sentenced defendant to a term of 126 months of imprisonment. At the time, defendant was 39 years of age. ECF 383 at 3; *id.* ¶ 36.

[2] A review of the docket in Judge Davis's case reveals that defendant was one of eleven defendants. Due to the age of the case, some docket entries are not electronically accessible.

**B.**

Supervised release is "a post-incarceration program intended 'to assist individuals in their transition to community life.'" *United States v. McLeod*, 972 F.3d 637, 641 (4th Cir. 2020) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)). "'[T]he primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term . . . or to provide rehabilitation to a defendant who has spent a fairly short period in prison . . . but still needs supervision . . . .'" *United States v. Lewis*, 90 F.4th 288, 294 (4th Cir. 2024) (citation omitted). Supervised release "essentially amounts to a *conditional* and *partial* release" from incarceration. *Id.* (emphasis in *Lewis*).

Punishment is not "an appropriate reason" to impose supervised release. *Lewis*, 90 F.4th at 294. Rather, supervised release "fulfills rehabilitative ends, distinct from those served by incarceration." *Johnson*, 529 U.S. at 59. In imposing supervised release, the court must consider, *inter alia*, the defendant's history and characteristics and the need to deter criminal conduct. *Lewis*, 90 F.4th at 295.

The Request implicates 18 U.S.C. § 3583(e)(1). It provides the District Court with authority to grant early termination of supervised release if, in the court's discretion, the relief is appropriate and in the interest of justice. It states:

> The court may, after considering the factors set forth in section 3553(a)(1),(a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) —
> (1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

In sum, under 18 U.S.C. § 3583(e)(1), a court, after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), may terminate

a defendant's term of supervised release at any time after the expiration of one year of supervision, if the Court is "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

In assessing whether a defendant has met that burden, a court must consider:

> (1) the nature and circumstances of the offense and the defendant's history and characteristics, 18 U.S.C. § 3553(a)(1);
>
> (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);
>
> (3) the kinds of sentence and sentencing range established for the defendant's crimes, § 3553(a)(4)(A);
>
> (4) pertinent policy statements issued by the United States Sentencing Commission, § 3553(a)(5);
>
> (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and
>
> (6) the need to provide restitution to any victims of the offense, § 3553(a)(7).

Effective November 1, 2025, the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") were amended as to the imposition, modification, termination, and revocation of supervised release. Of relevance here, the Amendment created a new section, U.S.S.G. § 5D1.4. Section 5D1.4(b) provides:

> (b) EARLY TERMINATION.—Any time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision, the court may terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice. See 18 U.S.C. § 3583(e)(1).

The Commentary includes factors that a court may want to consider in determining whether early termination is appropriate:

(B) **Early Termination.**—When determining whether to terminate the remaining term of supervised release under subsection (b), the court may wish to consider such factors as:

(i) any history of court-reported violations over the term of supervision;

(ii) the ability of the defendant to lawfully self-manage (e.g., the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges);

(iii) the defendant's substantial compliance with all conditions of supervision;

(iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision;

(v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and

(vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant.

Here, defendant committed a very serious offense. *See* 18 U.S.C. § 3553(a)(1). The Plea Agreement contains a stipulation of facts that sets forth the gravity of the crime. ECF 317. As the Plea Agreement reflects, defendant was involved in a drug conspiracy involving distribution of a large quantity of dangerous drugs.

To be sure, defendant appears to be doing quite well on supervised release. I join the USPO in applauding defendant's progress. But, supervision undoubtedly has helped guide defendant to the right path and to remain there. *See United States v. Buchanan*, 638 F.3d 448, 451 (4th Cir. 2011) (noting that supervised release is intended "'to improve the odds of a successful transition from the prison to liberty.'") (citation omitted).

Moreover, conduct consistent with compliance is consistent with the expectations and conditions of supervised release. *See*, *e.g.*, *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D. N.Y. 2015) (recognizing that "'full compliance with the terms of supervised release is what is expected of the defendant and does not warrant early termination'") (citation omitted); *Folks v. United States*, 733 F. Supp. 2d 649, 651-52 (M.D. N.C. 2010) (recognizing that although compliance with supervised release conditions is "commendable," it is "what is required . . . and is not a basis for early termination of [defendant's] supervised release"); *United States v. Guillatt*, 2005 WL 589354, *1 (E.D. Pa. 2005) ("The conduct cited by defendant is commendable. However, it is nothing more than what is required under the terms of defendant's probation."). If mere compliance with the terms of the court's supervision were sufficient to merit early termination, "the exception would swallow the rule." *Id.*; *see also United States v. Lohman*, 2007 WL 1430282, *1 (E.D. Wis. 2007) (holding that if simple compliance were sufficient for early termination, "every defendant who avoided revocation would be eligible for early termination").

As noted, defendant has only served about 18 months of his five-year term of supervised release. Congress set the minimum length of the supervision term. *See* 21 U.S.C. § 841(b)(1)(A); ECF 327, ¶ 65. And, at the time of sentencing, I thought five years of supervision was appropriate in light of the offense itself and other factors. I was also mindful of the 10-year length of the term of imprisonment.

As discussed, President Biden subsequently commuted the defendant's 126-month sentence after about seven and a half years. So, to the extent that a lengthy sentence would help assure defendant's future compliance with the law, defendant's sentence here was cut short. As I see it, this is all the more reason why continued supervision of the defendant is warranted.

Moreover, it is noteworthy that defendant's supervision in his prior federal case commenced on June 1, 2012, and terminated on May 30, 2016. ECF 383, ¶ 26, *see*, *e.g.*, AMD-06-00448, ECF 253. Yet, by at least September 2016, defendant became involved in the drug conspiracy at issue here. *See* ECF 317, ¶ 6(a). In other words, even assuming that defendant's conduct in this case began no earlier than September 2016, he reverted to serious criminal misconduct within about three months following the end of his prior supervised release. This clearly suggests that termination of supervision now, after only 18 months of supervision, is completely inappropriate.[3]

The Court's primary focus concerns 18 U.S.C. § 3553(a)(1). Public safety weighs heavily here. Other factors are also important. They include the nature and circumstances of the underlying offense, the need to promote respect for the law, and the crucial need to deter any future misconduct by defendant. All of these factors lead me to conclude that early termination of supervision is not appropriate at this time.

**C.**

In my view, supervision is critical to assist defendant in maintaining his status as a law-abiding, productive member of the community. Moreover, supervised release is not unduly burdensome, particularly when I consider the gravity of the defendant"s crime. Therefore, I shall deny the Request, without prejudice to the right to renew the Request at a later time.

An Order follows.

[3] At sentencing in this case, the government noted its concern about recidivism by the defendant, pointing out "that he finished one federal sentence and then finds himself here today." ECF 433 at 16 (Sentencing Transcript, August 14, 2018) at 16. Yet, neither the government nor the USPO appear to have considered the defendant's involvement in this case shortly after the end of his prior supervision.

Date: August 26, 2026

/s/
Ellen L. Hollander
United States District Judge